UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL   'O'

| Case No. | 2:16-cv-07144-CAS(KSx) | Date | November 20, 2017 |
|---|---|---|---|
| Title | CHRISTOPHER LANDIG v. COOPERSURGICAL, INC. ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Laura Elias | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Mahru Madjidi | R. David Jacobs |

**Proceedings:**   DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (dkt. 43, filed October 5, 2017)

## I.   INTRODUCTION

On August 24, 2015, plaintiff Christopher Landig filed the instant action against CooperSurgical, Inc., Tim Mukand, Bryan Hickman, Joanne Augustine, and Does 1 to 100 in Los Angeles County Superior Court. Dkt. 1 & Ex. 1 ("Compl."). Plaintiff asserts the following claims against defendants: (1) age discrimination in violation of the Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code § 12940 et seq.; (2) harassment on the basis of age in violation of FEHA; (3) retaliation in violation of FEHA; (4) failure to promote in violation of FEHA; (5) breach of express oral contract not to terminate employment without good cause; (6) breach of implied-in-fact contract not to terminate employment without good cause; (7) negligent hiring, supervision, and retention; (8) wrongful termination of employment in violation of California public policy; (9) violation of California Labor Code § 1102.5; and (10) intentional infliction of emotional distress. Id. On September 22, 2016, CooperSurgical filed an answer, dkt. 1, and also filed a notice of removal asserting diversity jurisdiction pursuant to 28 U.S.C. §§ 1332(a) and 1441, dkt. 1.

On November 14, 2016, the Court issued an order dismissing Mukand and Augustine from this action without prejudice, finding that the claims against Mukand were untimely and that plaintiff failed to adequately allege claims against Augustine. Dkt. 19.

| | **CIVIL MINUTES – GENERAL** | | **'O'** |
|---|---|---|---|
| Case No. | 2:16-cv-07144-CAS(KSx) | Date | November 20, 2017 |
| Title | CHRISTOPHER LANDIG v. COOPERSURGICAL, INC. ET AL. | | |

On October 5, 2017, CooperSurgical and Hickman (collectively, "defendants") filed the instant motion for summary judgment. Dkt. 43 ("MSJ"). Plaintiff filed his opposition on October 23, 2017, dkt. 47 ("Opp'n), and defendants filed their reply on October 30, 2017, dkt. 48 ("Reply").

Having carefully considered the parties arguments, the Court finds and concludes as follows.

## II. BACKGROUND

The following facts are not meaningfully disputed and are set forth for purposes of background. Unless otherwise noted, the court references only facts that are uncontroverted and as to which evidentiary objections have been overruled.[1]

### A. Plaintiff's Hiring and Promotion at CooperSurgical

CooperSurgical, based in Connecticut, manufactures and provides medical devices and procedure-based solutions for women's healthcare throughout the United States and Europe. Defendants' Statement of Uncontroverted Facts ("DSUF"), dkt. 49, at no. 1; Declaration of Joanne Augustine, dkt. 43-7 ("Augustine Decl.") ¶ 2. Its clients include hospitals, doctors, and fertility specialists, among others. Id. Plaintiff was hired as a certified sales representative for CooperSurgical in November 2006 in the company's Surgical Business Unit. Plaintiff's Statement of Facts ("PSF"), dkt. 47-1, at no. 1; DSUF at no. 2; Deposition of Christopher Landig ("Landig Depo.") at 19:-6-20:6 & Ex. 2; Compl. ¶ 10.

Plaintiff's offer letter reflected that his employment at CooperSurgical was at will. DSUF at no. 132; Landig Depo. at 19:6-20:8 & Ex. 2. On or about December 12, 2012, plaintiff signed an authorization form acknowledging that "my employment relationship with CooperSurgical is an employment-at-will relationship, that I have the right to terminate my employment at any time, and that CooperSurgical may terminate our

---

[1]     The Court does not rely upon plaintiff's submission of the Declaration of Giovanni Boschetti for purposes of its analysis. See Declaration of Giovanni Boschetti, dkt. 47-10. Accordingly, the Court does not reach defendants' objections to this declaration, see dkt. 52. Moreover, the Court does not rely upon the Declaration of Steven Denmark, submitted by plaintiff. See Declaration of Steven Denmark, dkt. 47-9. Likewise, the Court does not reach defendants' objections to this declaration.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| **CIVIL MINUTES – GENERAL** | | | **'O'** |
|---|---|---|---|
| Case No. | 2:16-cv-07144-CAS(KSx) | Date | November 20, 2017 |
| Title | CHRISTOPHER LANDIG v. COOPERSURGICAL, INC. ET AL. | | |

employment relationship at any time, with or without cause and with or without notice." DSUF at no. 133; Landig Depo. at 65:14-66:9 & Ex. 6. Plaintiff understood that he was employed pursuant to an at-will agreement, DSUF at no. 134; Landig Depo. at 20:16-21:2, 21:10-13 & Ex. 2, and he was never told otherwise by anyone at CooperSurgical, DSUF at no. 135; Landig Depo. at 21:3-5. Moreover, plaintiff has not seen any writing to indicate that his employment at CooperSurgical was not at will. DSUF at no. 137; Landig Depo. at 21:6-9.

Sales in the United States for CooperSurgical's Surgical Business Unit are divided into geographical regions run by Regional Managers. DSUF at no. 3; Declaration of Greg Azarian, dkt. 43-5 ("Azarian Decl.") ¶ 4. Territories within each region are assigned to a single salesperson. DSUF at no. 4; Azarian Decl. ¶ 4. The territories that salespeople are assigned to are subject to realignment or alteration. PSF at no. 10; Deposition of Hickman ("Hickman Depo.") at 129:5-130:19; Landig Decl. ¶ 6.

Plaintiff was the sole representative assigned to the LA Basin territory, which is part of the Western Region. DSUF at no. 5; Declaration of Bryan Hickman, dkt. 43-9 ("Hickman Decl.") ¶ 3. Plaintiff worked out of his home in Yorba Linda and also worked "out in the field." PSF at no. 2; DSUF at no. 6; Landig Depo. at 15:18-22; 16:7-9; Landig Decl. ¶ 4. Plaintiff achieved favorable sales numbers in 2010 and 2011. PSF at no. 3; Landig Decl. ¶ 8 & Ex. 1; Landig Depo. at 80:14-82:6.

In or about 2011, Bryan Hickman became the Regional Manager of the Western Region, and thereby became plaintiff's supervisor. DSUF at no. 7; Hickman Decl. ¶ 3. Hickman replaced plaintiff's former supervisor, Tim Mukand.[2] PSF at no. 5; Landig Depo. at 28:10-12. Hickman had initial reservations about what he perceived as plaintiff's lack of a sense of urgency and planning, but felt that their working relationship was generally good. DSUF at no. 8; Id. ¶ 5.

In 2011 Hickman assigned parts of plaintiff's territories to a younger sales employee, Matthew Kama, who was in his 30s. PSF at no. 9; Hickman Depo. at 140:9-

---

[2]     Insofar as plaintiff proffers evidence pertaining to Hickman's hiring and replacement of Mukand as Regional Manager, the Court does not deem these facts material. Plaintiff's failure to promote claim appears to be limited to the promotion that plaintiff sought in February 2015, and is not premised on the factual circumstances surrounding the hiring for this Regional Manager position in 2010. See Opp'n at 20.

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:16-cv-07144-CAS(KSx) | Date | November 20, 2017 |
|---|---|---|---|
| Title | CHRISTOPHER LANDIG v. COOPERSURGICAL, INC. ET AL. | | |

11, 141:12-16. The realignment of plaintiff's territories, which went into effect on November 1, 2011, included reassigning UCLA and Kaiser, two of plaintiff's most valuable accounts, to Kama. PSF at no. 10; Hickman Depo. at 129:5-130:19, 140:9-11; Landig Decl. ¶ 6. Hickman told plaintiff that he took UCLA out of plaintiff's territories as part of an effort to create a territory for Kama to be successful. PSF at no. 12; Landig Depo. at 85:1-13. Kama had missed quota for a year and a half before being assigned this portion of plaintiff's territories.[3] PSF at no. 13; Landig Depo. at 82:7-25. Once these territories were realigned, plaintiff's numbers dropped.[4] PSF at no. 14; Landig Depo. ¶ 80:14-82:6; Landig Decl. ¶ 7.

In February or March 2012, Hickman promoted plaintiff to Senior Certified Sales Representative position because Hickman's superior had an expectation that he would do so, and because of Hickman's five direct employees, plaintiff was the only one eligible for promotion. PSF at no. 15; DSUF at no. 9; Hickman Depo. at 119:4-19, 151:3-23; Hickman Decl. ¶ 6; Landig Dep. at 66:11-17; 68:3-9; Landig Decl. ¶ 4. In connection with the promotion, plaintiff received higher commissions. DSUF at no. 10; Landig Depo. at 67:21-23; Hickman Decl. ¶ 6. At the time of this promotion, plaintiff was 56 years old. DSUF at no. 11; Augustine Decl. ¶ 4(f).

**B.    Plaintiff's Annual and Disciplinary Reviews 2012-2014**

On or about June 6, 2012, Hickman delivered a mid-year performance review to plaintiff. DSUF at no. 12; Landig Depo. 71:21-73:10; 111:17-112:12 & Ex. 8. Plaintiff believed that the review was accurate. DSUF at no. 13; Landig Depo. at 71:21-73:10; 111:17-112:12 & Ex. 8.

---

[3]     Defendants object to this evidence as immaterial, however, it is relevant insofar as it relates to the issue of discrimination on the basis of plaintiff's age because it demonstrates that Hickman reassigned territory to a much younger employee.

[4]     Defendants object that this mischaracterizes the evidence, arguing that plaintiff's pre- and post-alignment performance against quota is not significantly different, citing plaintiff's chart he prepared for Azarian attached to Jacobs Decl. ¶ 15 & Ex. 16. However, the realignment took effect on November 1, 2011, and plaintiff's chart reflects an 8.24 percent drop in performance from 2011 to 2012—specifically, his performance in 2011 was 100.24 percent to quota, and in 2012 his performance was 92 percent to quota.

CIVIL MINUTES – GENERAL        'O'

| Case No. | 2:16-cv-07144-CAS(KSx) | Date | November 20, 2017 |
| Title | CHRISTOPHER LANDIG v. COOPERSURGICAL, INC. ET AL. | | |

On or about September 14, 2012, Hickman issued a disciplinary letter (the "September 2012 Performance Letter") to plaintiff notifying him that he was not on track to meet his quota for the fiscal year ending in October 2012 and setting forth specific goals and expectations. DSUF at no. 14 & Ex. 9; Landig Depo. 77:8-21, 79:21-80:10; Hickman Decl. ¶ 7. The parties dispute Hickman's motivation in issuing the letter, whether the letter was used as an act of discrimination against plaintiff, and the alleged events occurring thereafter.

The parties do not dispute the following contents of the September 2012 Performance Letter: (1) plaintiff was at 88.69 percent of his year-to-date quota, DSUF at no. 15; Landig Depo., 78:1-7 & Ex. 9; Hickman Decl., ¶ 7 & Ex. 9; and (2) the average territory in the Surgical Business Unit was at 22 percent growth for the year, while plaintiff's territory was at 7.8 percent growth, DSUF at no. 16; Landig Depo., 78:8-16 & Ex. 9. While plaintiff does not dispute the letter's contents, he implies, without evidence, that the letter was pretextual and prepared to create a record suggesting inadequate performance.

One of the goals set forth in the September 2012 Performance Letter was that plaintiff make at least 95 percent of his quota.[5] DSUF at no. 18; Landig Depo. at 78:8-16 & Ex. 9; Hickman Decl., ¶ 7, & Ex. 9. The September 2012 Performance Letter advised plaintiff that if he did not meet the goals set forth in the letter, his employment could be terminated. DSUF at no. 20; Landig Depo. at 78:8-16 & Ex. 9; Hickman Decl., ¶ 7 & Ex. 9. Though Augustine—the manager of human resources at CooperSurgical—could not recall her roll in drafting the language "up to and including termination" in plaintiff's letter, Hickman testified that he was the one who wrote the employment termination language in plaintiff's performance letter. PSF at no. 18 & Ex. 5; Augustine Depo. 147:8-148:21; Hickman Depo. 162:8-22; Landig Decl. ¶ 10.

Around the same time Hickman issued plaintiff the September 2012 Performance Letter, he issued one to a younger unidentified employee, approximately in his 30's, (hereinafter "Employee E") who was also not on track to make quota. PSF at no. 17 & Exs. 3,4; DSUF at no. 22; Hickman Decl., ¶ 8 & Ex. 47; Landig Decl. ¶ 9; Landig Depo. 46:16-48:4. Hickman perceived Employee E as an inexperienced sales representative and did not feel that he needed as serious a message as plaintiff to motivate him—

---

[5]     The parties agree that CooperSurgical Sales Associates operate on a tight curve, but dispute the percentage that is considered acceptable.

| | **CIVIL MINUTES – GENERAL** | | **'O'** |
|---|---|---|---|
| Case No. | 2:16-cv-07144-CAS(KSx) | Date | November 20, 2017 |
| Title | CHRISTOPHER LANDIG v. COOPERSURGICAL, INC. ET AL. | | |

accordingly, Employee E's letter mentioned probation, and not termination, as a possible consequence if his outlined goals were not met. DSUF at no. 23; Hickman Decl., ¶ 8 & Exh. 47; Landig Depo., 46:1-48:13.

Plaintiff believed that he was discriminated against on the basis of his age because he was threatened with employment termination and Employee E, who was younger, was not threatened with employment termination. PSF at no. 19; Landig Decl. ¶ 9. On or about September 18, 2012, plaintiff emailed Augustine to complain about the September 2012 Performance Letter and stated that Hickman's attitude, as reflected in the letter, had more to do with plaintiff's age than with his performance. PSF at no. 22; DSUF at no. 100; Landig Depo. at 45:21-46:9 & Ex. 3; Augustine Decl. ¶ 7 & Ex. 3. Plaintiff also objected to his recent territory realignment, stating that it was unfair and made it harder for him to meet his quota.[6] DSUF at no. 101; Landig Depo. at 45:21-46:8 & Ex. 3; Augustine Decl. ¶ 7 & Ex. 3. Augustine testified that defendants' policy and procedure is to conduct an investigation of any complaint of discrimination or harassment. PSF at no. 23; Augustine Depo. at 135:17-136:11.

Plaintiff does not dispute that Augustine concluded there was no evidence of age bias, and communicated this conclusion to plaintiff. DSUF at no. 102; Augustine Decl. ¶ 7 & Ex. 3. Plaintiff argues that Augustine's investigation was inadequate or flawed because it lacked the requisite thoroughness. However, plaintiff offers no admissible evidence to support this conclusion.

Augustine did not tell Hickman or Azarian about plaintiff's complaint, and did not tell them that plaintiff was concerned that his age was a possible factor in his performance letter. DSUF at no. 103; Landig Depo. at 103:14-24; Augustine Decl. ¶ 9; Azarian Decl. ¶ 20; Hickman Decl. ¶ 7. Hickman and Azarian were not aware until after plaintiff's employment was terminated that plaintiff had made an internal age

---

[6]     Insofar as defendants object to plaintiff's characterization that losing the territories made it more difficult for him to reach his quota—because this statement is vague, lacks foundation, is an improper lay opinion, is conclusory, is argumentative, and is irrelevant—the Court overrules these objections. Plaintiff has personal knowledge of the impact of his territory realignment, it is relevant to his competency as an employee, and if the instant action reaches trial, plaintiff will have an opportunity to lay a foundation for this statement at that time.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:16-cv-07144-CAS(KSx) | Date | November 20, 2017 |
| Title | CHRISTOPHER LANDIG v. COOPERSURGICAL, INC. ET AL. | | |

discrimination complaint about Hickman. DSUF at nos. 104-105; Hickman Decl. ¶ 7; Azarian Decl. ¶ 20.

Several weeks after plaintiff received the September 2012 Performance Letter, he protested to Hickman that he believed the performance improvement plan was unfair because his territory had been cut the prior year and given to Kama, a younger sales representative, and plaintiff was still carrying the quota for those territories. PSF at no. 25; Hickman Depo. at 140:9-11; Landig Depo. at 80:14-82:6; Landig Decl. ¶ 12.

On or about January 15, 2013, Hickman presented plaintiff with a year-end performance review which reflected that plaintiff's performance was satisfactory, noting "[a]lthough Chris did not hit his Performance Improvement Plan objective of 95% to quota, he did have a strong 4th quarter to finish at 92%." DSUF at no. 25; Landig Depo. at 106:12-14, 107:1-13, 108:6-14, 113:15-19, 113:25-114:6 & Ex. 10; Hickman Decl. ¶ 8 & Ex. 10. Plaintiff did not see any reason to refute anything in the year-end performance review. DSUF at no. 26; Landig Depo., 107:14-108:5 & Ex. 10.

On or about January 25, 2013, Hickman felt that he needed to motivate plaintiff again and issued plaintiff another performance improvement letter (the "January 2013 Performance Letter").[7] PSF at no. 28; DSUF at no. 27; Landig Depo., 113:3-14 & Ex. 11; Hickman Decl. ¶ 10 & Ex. 11. The January 2013 Performance Letter reflected that plaintiff was not meeting his goals and objectives and that his "territory ranks the lowest in sales in the region and is the only territory with year to date sales below base," and further reflected that plaintiff was required to meet 100% of quota for the year. DSUF at no. 28; Landig Depo. at 113:3-14 & Ex. 11; Hickman Decl. ¶ 10 & Ex. 11. The contents of the letter are undisputed: (1) plaintiff had grown his sales 3 percent between the September 2012 Performance Letter and the end of the fiscal year; (2) he was trending below base at 94.9 percent of his base; (3) he was trending to finish January at 84.6 percent of his quota; and (4) he had negative year-to-date growth in all product

---

[7]    Plaintiff disputes that Hickman issued the performance letter to motivate plaintiff, yet plaintiff's evidence that Hickman subsequently identified plaintiff in the November 2013 performance review as "extremely self-motivated," Dkt. 47 & Ex. 7, does not foreclose, and thus does not controvert, Hickman's motivation in issuing the January 2013 Performance Letter.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:16-cv-07144-CAS(KSx) | Date | November 20, 2017 |
|----------|------------------------|------|-------------------|
| Title | CHRISTOPHER LANDIG v. COOPERSURGICAL, INC. ET AL. | | |

categories, with the exception of two products.[8] DSUF at nos. 29-32; Landig Depo., 113:20-114:19 & Ex. 11; Hickman Decl. ¶ 10 & Ex. 11. The letter notified plaintiff that he faced employment termination if he did not meet the letter's stated objectives. PSF at no. 29; Landig Decl. ¶ 13 & Ex. 6.

Plaintiff told Hickman that the January 25, 2013 letter was for the purposes of harassment, and that he had "given it his all" to get to 92 percent after a year where his territory was cut.[9] PSF at no. 30 & Ex. 6; Landig Depo. at 115:25-116:17; Landig Decl. ¶ 13. Plaintiff did not have an issue with Hickman communicating the content of this letter to him orally, but he took issue with Hickman putting it in writing and adding it to his file. DSUF at no. 33; Landig Depo. at 117:7-21, 118:18-22 & Ex. 11. Plaintiff also took issue with the letter insofar as it threatened him with employment termination. Landig Decl. ¶ 13.

On or about May 24, 2013, Hickman issued plaintiff a mid-year performance review that plaintiff agreed was favorable. DSUF at no. 34; Landig Depo. at 119:16-21, 121:15-122:2, 122:18-123:2 & Ex. 12. Plaintiff finished the fiscal year at 96 percent of quota, though this fell short of the 100 percent quota set forth in the January 2013 Performance Letter.[10] DSUF at no. 35; Landig Depo. at 128:24-129:23 & Ex. 13; Hickman Decl. ¶ 11 & Ex. 13. Hickman felt that plaintiff had made a good effort at that time that he issued plaintiff an end-of-year performance review on November 15, 2013, which plaintiff agreed was fair and positive. DSUF at no. 36; Landig Depo. at 128:22-129:13 & Ex. 13; Hickman Decl. ¶ 11 & Ex. 13.

On or about May 13, 2014, Hickman issued plaintiff a mid-year performance review, which plaintiff agreed was fair and favorable. DSUF at no. 37; Landig Depo. at 129:24-131:2 & Ex. 14. For fiscal year 2014, plaintiff was at 104 percent of quota. PSF at no. 32; DSUF at no. 38; Landig Depo. at 131:18-24; Hickman Decl. ¶ 12. On or about November 11, 2014, Hickman issued plaintiff an end-of-year performance review, which

---

[8]     Although plaintiff does not dispute that these facts accurately portray the content of the document, he disputes the reasons that allegedly made it difficult for plaintiff to meet his quota that year.

[9]     The Court overrules defendants' objection to this fact as hearsay because this fact tends to show plaintiff's state of mind.

[10]    Plaintiff disputes the significance of his quota achievement.

Landig agreed was fair and favorable.  DSUF at no. 39; Landig Depo. at 131:25-132:24 & Ex. 15.

### C.    Azarian's 2015 Promotion to Vice President and Subsequent Interactions with Plaintiff

In January 2015, Gregory Azarian was promoted to Vice President of the Surgical Business Unit at CooperSurgical, which oversees sales in all U.S. regions.  He became Hickman's supervisor.  DSUF at no. 40; Azarian Decl. ¶ 3; Hickman Decl. ¶ 13.

Azarian began looking for someone to fill the Regional Manager, Mountain States position.  DSUF at no. 110; Azarian Decl. ¶ 5.  On or about February 5, 2015, plaintiff informed Azarian that he was interested in the Regional Manager, Mountain States position, and Azarian asked him to forward a list of accomplishments.  DSUF at no. 111; Landig Depo. at 133:21-134:25 & Ex. 16; Azarian Decl. ¶6.  On or about February 11, 2015, plaintiff forwarded this information to Azarian.  PSF at no. 35; DSUF at no. 112; Landig Depo. at 133:21-134:25 & Exh. 16; Azarian Decl. ¶ 7 & Ex. 16.  The Mountain States Region included Northern California, Washington, Oregon, Montana, Idaho, Wyoming, Northern Nevada, Utah, and Colorado.  DSUF at no. 114; Azarian Decl. ¶ 8. Azarian preferred that Regional Managers live within their regions in order to cut down on travel time and expenses.  DSUF at no. 113; Azarian Decl. ¶ 8; Landig Depo. at 140:25-141:10.

Azarian, who was based in Connecticut, conducted a telephonic interview with plaintiff for the position.  DSUF at no. 115; Landig Depo. at 138:9-25; Azarian Decl. ¶¶ 3, 8.  After the interview, Azarian formed the impression that plaintiff was not willing to move in order to live in the territory, DSUF at no. 116; Azarian Decl. ¶ 8, although plaintiff contends that he specifically told Azarian he was willing to relocate, PSF at no. 35; Landig Decl. ¶ 5; Landig Depo. at 140:20-24, 141:25-142:6.

On February 24, 2015, Azarian emailed plaintiff and inquired whether he was still interested in the Regional Manager position and noted that he had not heard from plaintiff.  DSUF at no. 117.  Plaintiff responded that he was still interested, and forwarded his new resume that day, as Azarian advised.  DSUF at no. 117; Landig Depo. at 146:21-148:19 & Exs. 17-18; Azarian Decl. ¶ 9 & Ex. 17.  The fact that Azarian had to prompt plaintiff to forward his current resume—after plaintiff had sent Azarian an outdated resume on February 11, 2015—left Azarian with the impression that plaintiff

| Case No. | 2:16-cv-07144-CAS(KSx) | Date | November 20, 2017 |
|---|---|---|---|
| Title | CHRISTOPHER LANDIG v. COOPERSURGICAL, INC. ET AL. | | |

was not pushing that hard for consideration for the promotion. DSUF at no. 118; Azarian Decl. ¶ 9.

Azarian ultimately decided to transfer Mukand, then Regional Manager, Southwest Region, laterally into the Mountain States Regional Manager position. DSUF at no. 121; Azarian Decl. ¶ 11; Augustine Decl. ¶ 4(h). Mukand was in his 50's at the time he transferred positions. DSUF at no. 122; Augustine Decl. ¶ 4(h). Azarian made this lateral transfer decision because (1) Mukand was already an experienced Regional Manager; (2) Azarian was familiar with his performance as a manager, having worked with him for several years; and (3) Mukand had recently relocated from Chicago to Pasadena, which was outside of both regions, but closer to the Mountain States Region.[11] DSUF at nos. 123-124; Azarian Decl. ¶ 11.

Plaintiff was informed of Azarian's decision regarding the Regional Manager positions on or about March 5, 2015. DSUF at no. 130; Landig Depo. at 148:20-149:17 & Ex. 19. Though plaintiff disagreed with this decision because of Mukand's alleged history of discriminatory age-based comments to another employee over the age of 40, Landig Decl. ¶ 27, plaintiff did not express his disagreement with this decision in his response to Azarian. DSUF at no. 131; Landig Depo. at 148:20-149:17 & Ex. 19.

**D.    Plaintiff's April 2015 Plan and Review Meeting with Hickman and Azarian**

In early 2015, after plaintiff's performance of 104 percent of quota for fiscal year 2014, Hickman shared concerns about plaintiff's performance with Azarian, who at that point had no knowledge of plaintiff's performance. PSF at no. 34; Azarian Depo. 150:3-22, 151:4-8, 165:12-24.

On or about March 30, 2015, Hickman sent an email to plaintiff to advise him that he and Azarian wanted to meet with him for a "Plan and Review" meeting on April 14, 2015. DSUF at no. 41; Landig Depo. at 165:12-166:6 & Ex. 21; Hickman Decl. ¶ 14. On or about April 8, 2015, Hickman emailed plaintiff to inform him that he should come prepared to discuss his territory growth strategy and target accounts through the end of the fiscal year 2015, territory opportunities and challenges, status of his top five revenue accounts, current contracts, target accounts where a new contract might be helpful, and

---

[11]    Neither plaintiff nor defendants attaches any significance to the fact that Mukand had apparently moved to Pasadena, which was outside the Mountain States Region.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                              **'O'**

| Case No. | 2:16-cv-07144-CAS(KSx) | Date | November 20, 2017 |
|---|---|---|---|
| Title | CHRISTOPHER LANDIG v. COOPERSURGICAL, INC. ET AL. | | |

his business at risk. DSUF at no. 42; Landig Depo. at 151:1-19 & Ex. 20; Hickman Decl. ¶ 15 & Ex. 20.

On or about April 14, 2015, Hickman and Azarian flew out to meet with plaintiff at the LAX Marriott for the scheduled meeting. DSUF at no. 43; Landig Depo. at 151:16-152:6, 165:12-166:6, & Ex. 21; Azarian Decl., ¶ 14; Hickman Decl., ¶ 16. During the meeting, Azarian and Hickman posed various questions to plaintiff about why certain aspects of his business were down and how plaintiff planned to meet his quota for the coming year. DSUF at no. 44; Landig Depo. at 156:13-15, 159:24-160:5; Azarian Decl., ¶ 15; Hickman Decl., ¶ 16. In response to questions regarding his low sales numbers, plaintiff expressed his concern that he had new products quota with no new products because their launches were delayed; CooperSurgical no longer had a patent on a particular device and accordingly, competition was setting in; and one of plaintiff's big accounts blamed Obamacare for a decrease in business. PSF at no. 36; Landig Depo. at 154:20-156:24, 160:16-25, 162:3-164:7; Landig Decl. ¶ 17. Azarian and Hickman did not inquire into the details of these reasons plaintiff gave to explain his low sales numbers.[12] PSF at no. 38; Landig Decl. ¶ 17.

The parties dispute the level of detail that plaintiff provided in response to questions from Hickman and Azarian, and whether plaintiff brought a written action plan with him to this meeting that detailed how he would meet his quota. Azarian was bothered that plaintiff did not provide answers with sufficient detail as to why sales were down in his territory, and Azarian excused himself from the room to collect his thoughts. DSUF at nos. 46, 48; Azarian Decl. ¶ 15.

Plaintiff felt that it was a tough and uncomfortable meeting, in part because he did not have an answer to how he was going to make up the "gap." DSUF at no. 49; Landig Depo. at 153:25-154:7, 155:4-20; 158:12-17, 159:4-8.[13] Plaintiff understood that Azarian was disappointed in his answers to questions posed to him during the meeting because he could not tell them how he was going to make up the gap in his quota. DSUF at no. 50;

---

[12]     Defendants object to this fact as immaterial because it fails to create a triable issue of fact. However, this fact is material insofar as it relates to the issue of pretext with respect to defendants' legitimate business reason for terminating plaintiff's employment.

[13]     The parties dispute whether plaintiff failed to have an answer to this question because plaintiff failed to bring a written plan, or because plaintiff did not have an answer because the "gap" was due to circumstances out of his control.

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:16-cv-07144-CAS(KSx) | Date | November 20, 2017 |
| Title | CHRISTOPHER LANDIG v. COOPERSURGICAL, INC. ET AL. | | |

Landig Depo. at 159:24-160:5. Plaintiff agreed that the questions that Azarian and Hickman asked him during the plan and review meeting were not unfair. DSUF at no. 51; Landig Depo. at 182:5-13.

Based on what Azarian perceived as (1) plaintiff's basic ignorance of the state of affairs in his own territory; (2) his lack of plan to stop the slide in sales; and (3) his apparent lack of caring that he had no plan, Azarian decided that plaintiff's employment should be terminated. DSUF at no. 52; Azarian Decl. ¶ 16. Azarian communicated this decision to Hickman after the plan and review meeting. DSUF at no. 53; Azarian Decl. ¶ 16; Hickman Decl. ¶ 17. However, this was not a final decision, as Azarian asked Hickman to work with plaintiff to help turn plaintiff's performance around before moving forward with plaintiff's employment termination. DSUF at no. 54; Azarian Decl. ¶ 16; Hickman Decl. ¶ 17. Accordingly, Azarian decided that, unless Landig engaged in specific and detailed planning necessary to provide his managers with basic information about his territory and necessary to meet his sales quotas, Azarian would move forward with the termination. DSUF at no. 55; Azarian Decl., ¶ 16.

The day following the plan and review meeting Hickman emailed plaintiff that he was embarrassed by his lack of detailed preparation, and attached a form spreadsheet that he requested plaintiff use to set monthly sales goals for each client target, including a detailed plan on how to achieve these goals. DSUF at no. 57; Landig Depo. at 172:8-173:10 & Ex. 22; Hickman Decl. ¶ 22. Plaintiff understood how Hickman could have been embarrassed by plaintiff's lack of detailed preparation for the meeting. DSUF at no. 58; Landig Depo. at 173:11-13. On or about April 22, 2015, Hickman provided plaintiff with an example of the kind of detailed information that he wanted plaintiff to use in his plans. DSUF at no. 59; Hickman Decl. ¶ 19 & Ex. 23.

On or about May 7, 2015, Hickman delivered plaintiff's mid-year review, the contents of which are undisputed—Hickman rated plaintiff as having "opportunity for improvement" in seven areas: creativity, self-confidence, having a sense of urgency, sales presentations, identifying high return opportunities, and displaying an understanding of the marketplace, customers and competition. Plaintiff was rated as "off plan" on all of his objectives and only at 82% of quota. The comments reflected he was ranked 70th in his business unit out of 82 sales representatives. DSUF at no. 60; Landig Depo. 186:14-190:14, 191:2-192:6 & Ex. 24; Hickman Decl., ¶ 20 & Ex. 24.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL                    'O'

| Case No. | 2:16-cv-07144-CAS(KSx) | Date | November 20, 2017 |
| Title | CHRISTOPHER LANDIG v. COOPERSURGICAL, INC. ET AL. | | |

### E.    Hickman's May 2015 Ride-Along with Plaintiff

On or about May 19-21, 2015, Hickman conducted a ride-along with plaintiff. DSUF at no. 63; Landig Depo. at 193:12-20; Hickman Decl. ¶ 22.  During a ride-along a supervisor accompanies a sales representative for the day, visits accounts, talks to customers, and observes surgeries.  DSUF at no. 64; Landig Depo. at 27:6-12.  The general purpose of a ride-along includes showcasing a sales representative's skills, facilitating communications with the Regional Manager, and helping the sales representative with tough accounts.  DSUF at no. 65; Landig Depo. 194:6-10.

On the first day of the ride-along, plaintiff picked up Hickman from the airport shortly after 1:00 pm.  DSUF at no. 66; Landig Depo. at 55:4-5.  During lunch Hickman told plaintiff that he knew plaintiff had his "big birthday," to which plaintiff responded, "What birthday?"  PSF at no. 42; Landig Depo. 206:7-13; Landig Decl. ¶ 20.  Hickman responded to plaintiff, "I know you are 60, Chris, you are the oldest and highest paid employee we have."[14]  Landig Depo. 206:13-18; Landig Decl. ¶ 20.

On the third and final day of the ride-along, plaintiff dropped Hickman off at his hotel so that Hickman could join a conference call scheduled for 12:30 p.m. and make other telephone calls thereafter.  PSF at no. 45; DSUF at no. 71; Landig Decl. ¶ 22.  Plaintiff asked Hickman's permission to see his son sworn into the military at a nearby ceremony, and Hickman agreed.  PSF at no. 45; Landig Depo. at 61:23-62:6; Hickman Decl. ¶ 23.  Plaintiff told Hickman that he would be gone for about an hour, yet plaintiff was gone for over four hours.  DSUF at nos. 72-73; Landig Depo. at 62:14-63:8; Hickman Decl. ¶ 23.  Plaintiff tried calling Hickman to warn him, but Hickman did not take his calls.  PSF at no. 46; Landig Depo. at 61:20-63:1; Landig Decl. ¶¶ 22-23.  Hickman was angry about what he perceived as a wasted afternoon and poor planning on plaintiff's part.  DSUF at no. 74; Hickman Decl. ¶ 23.  Plaintiff anticipated that Hickman would be angry.  PSF at no. 46; DSUF at no. 75; Landig Depo. at 61:16-19.  After plaintiff arrived back at Hickman's hotel, the two sat down to discuss the ride-along and disagreed on how the ride-along went; Hickman lost his temper and screamed "Fuck you!

---

[14]    Plaintiff does not dispute that this was Hickman's only comment that explicitly references his age.  DSUF at no. 95; Landig Depo. at 196:25-199:6, 203:13-22, 266:17-267:24 & Ex. 26.

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:16-cv-07144-CAS(KSx) | Date | November 20, 2017 |
|----------|------------------------|------|-------------------|
| Title | CHRISTOPHER LANDIG v. COOPERSURGICAL, INC. ET AL. | | |

Fuck you! I'm so mad I could kill you!" and raised his fists at plaintiff. PSF at no. 47; Landig Depo. at 210:18-211:8, 329:10-330:1; Landig Decl. ¶ 23.

Hickman prepared a field coaching report for the trip to let plaintiff know that his level of planning and activity was not where it needed to be, noting that "[t]he level of activity is too low and unacceptable…[t]alking with two surgeons, attending one proctor RUMI II case, and stopping by two hospitals over the course of a two half day and one full day field visit is not enough activity." DSUF at no. 76; Hickman Decl. ¶ 24 & Ex. 27; Landig Depo. at 215:8-16, 234:7-14 & Ex. 27. Plaintiff prepared comments in response to the field coaching report that included: "As far as what we accomplished, I am my own worst enemy and always wish I had done more throughout the day.…I wanted to and fully intended to bring you to Cedars, Little Co of Mary and San Dimas Hospital." DSUF at no. 77; Landig Depo. at 230:8-20, 232:4-19, 256:16:257:16 & Ex. 28.

In late May 2015, plaintiff reported to Augustine that on the last day of his May ride-along with Hickman, Hickman blew up at him, held his fists in the air, directed profanities at him, and yelled "I'm so mad at you I could kill you." PSF at no. 49; DSUF at no. 96; Landig Depo. at 59:18-60:1; Augustine Decl., ¶ 10 & Ex. 49. Though Augustine did not interpret plaintiff's complaint about Hickman to be related to perceived age harassment or discrimination, DSUF at no. 108; Augustine Decl. ¶ 10 & Ex. 49, the parties dispute whether plaintiff's report actually included a complaint for Hickman's age-related comments during the first day of the ride-along, and if so, whether Augustine investigated this portion of plaintiff's complaint. Augustine's contemporaneous notes of her interview with plaintiff do not reflect any reference to plaintiff's age; she did not interpret plaintiff's complaint about Hickman to be related to perceived age harassment or discrimination; and she believes her notes are accurate. DSUF at no. 98; Augustine Decl. ¶ 10 & Ex. 49. On or about the following day, Augustine spoke with Hickman about the incident, and Hickman confirmed his anger and profanities, but stated that plaintiff had sworn as well and denied saying "I'm so mad at you I could kill you" to plaintiff. DSUF at no. 97; Augustine Decl. ¶ 10 & Ex. 49. As a result of her report, Augustine told Hickman to be cautious of his emotions and the use of inappropriate language. DSUF at no. 99; Augustine Decl. ¶ 10 & Ex. 49.

Augustine informed Azarian that Hickman used profanity to plaintiff during their ride-along in May. PSF at no. 52; Azarian depo. at 217:10-218:11. Azarian and Augustine both agreed that it is inappropriate for a regional manager to yell profanities at

| Case No. | 2:16-cv-07144-CAS(KSx) | Date | November 20, 2017 |
|---|---|---|---|
| Title | CHRISTOPHER LANDIG v. COOPERSURGICAL, INC. ET AL. | | |

a sales representative or to make comments about the representative's age.  PSF at no. 53; Azarian Depo. at 221:4-11; Augustine Depo. at 221:24-223:3.

## F.      Hickman's Second Ride-Along with Plaintiff and July 2015 Email

On or about June 23, 2015, Hickman conducted another ride-along with plaintiff.[15] DSUF at no. 79; Hickman Decl. ¶ 26 & Ex. 46.  Hickman intended to spend two days with plaintiff, but ended up only staying one day.  PSF at no. 55 & Ex. 16; Landing Decl ¶28; Hickman Depo. at 246:19-25; DSUF at no. 79.  The parties dispute Hickman's motivation for ending the ride-along early.  Hickman contends that he ended it early after plaintiff had calendared a case with Dr. Cifuentes for the wrong day, causing them to miss the scheduled case.  DSUF at no. 80; Landig Depo. at 395:3-6, 395:17-396:10, 399:13-20 & Ex. 46; Hickman Decl. ¶ 26, and Ex. 46.  It is undisputed that plaintiff made this calendaring mistake.  Landig Depo. at 399:13-20.  Plaintiff contends that Hickman cut the ride-along short by one day because he wanted to go home and "get some things done" and did not care to spend time with Landig.  PSF at no. 55; Landig Decl., ¶ 28.

The parties do not dispute the contents of a July 18, 2015 email that Hickman sent to plaintiff, which noted that the level of detail in his weekly schedules had not increased, as Hickman had asked, and requested that plaintiff help him understand how he intended to reach his quota.  DSUF at no. 82.  Plaintiff responded by essentially saying that the market was saturated and changing his behavior would not change that ("I appreciate your insight; however, it is not about a change in behavior").  DSUF at no. 82; Landig Depo. at 388:7-24 & Ex. 44; Hickman Decl., ¶ 27 Ex. 44; Landig Decl. ¶ 28 & Ex. 25.

## G.      Plaintiff's August 2015 Employment Termination

On or about August 9, 2015, Azarian decided that he wanted to proceed with the termination of plaintiff's employment.  DSUF at no. 83; Azarian Decl. ¶ 19.  The parties dispute the extent to which Azarian relied on information from Hickman in reaching this final decision.  Whether Azarian relied on information from Hickman in reaching the

---

[15]      Though the specific date is unclear, during this final ride-along Hickman told plaintiff a statement to the effect of, "Boy, that UCLA sure is something else.  It just keeps growing and growing on Lonestar," implying that Kama was getting all of the benefits of the account after the 2011 realignment.  PSF at no. 12; Landig Depo. at 80:14-82:6.  Defendants object to this evidence as immaterial, however, it is relevant insofar as it relates to the issue of harassment on the basis of plaintiff's age.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL                              'O'

| Case No. | 2:16-cv-07144-CAS(KSx) | Date | November 20, 2017 |
| Title | CHRISTOPHER LANDIG v. COOPERSURGICAL, INC. ET AL. | | |

following conclusion, it is undisputed that Azarian concluded that plaintiff's itineraries evidenced a lack of detailed planning necessary to reach his sales quota. DSUF at no. 84; Azarian ¶¶ 18-19. On or about this same date, the parties do not dispute the contents of Hickman's email to Augustine in which he stated that he and Azarian would like to move forward with the decision to terminate plaintiff's employment based on his inability to follow direction, effectively plan and manage his territory, and perform the activities necessary to reach his goals. DSUF at no. 85; Hickman Decl. ¶ 29 & Ex. 51. Hickman stated in this email to Augustine that he and Azarian had spoken and were in complete agreement about the decision to terminate plaintiff's employment. PSF no. 59 & Ex. 19; Hickman Depo. at 254:22-255:7, 256:4-9.

On or about August 21, 2015, Hickman and Augustine called plaintiff and notified him that his employment was terminated. PSF at no. 63; DSUF at no. 86; Compl. ¶ 14(a); Hickman Decl., ¶ 30; Augustine Decl., ¶ 13. Plaintiff was 60 years old at the time. Landig Decl. ¶¶ 2. Azarian did not know plaintiff's age at the time of his employment termination, although he assumed that plaintiff was close to Azarian's own age.[16] Plaintiff's handwritten notes from the telephone call do not mention age. DSUF at no. 87; Jacobs Decl. ¶ 36 & Ex. 52. However, plaintiff contends that he stated during the telephone call that the real reason for his termination was due to his age. PSF at no. 64; Landig Decl. ¶ 29. As of the date of plaintiff's deposition, it is undisputed that he did not know who made the decision to terminate his employment. DSUF at no. 89; Landig Depo. at 270:13-18.

Plaintiff now suffers from anxiety, depression, and stomach issues. PSF at no. 72; Landig Depo. at 372:7-19. Since the termination of his employment, plaintiff regularly takes medicine to help him sleep and cope with his anxiety and depression. PSF at no. 73; Landig Depo. at 371:19-372:6.

## III. LEGAL STANDARDS

### A. Summary Judgment

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

---

[16]    Azarian is 55 years old, DSUF at no. 91; Augustine Decl. ¶ 4(a), Hickman is 50 years old, DSUF at no. 92; Augustine Decl ¶ 4(d), and Augustine is 54 years old, DSUF at no. 93; Augustine Decl. ¶ 5.

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:16-cv-07144-CAS(KSx) | Date | November 20, 2017 |
|---|---|---|---|
| Title | CHRISTOPHER LANDIG v. COOPERSURGICAL, INC. ET AL. | | |

56(a).  The moving party bears the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each claim upon which the moving party seeks judgment.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party meets its initial burden, the opposing party must then set out specific facts showing a genuine issue for trial in order to defeat the motion.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); see also Fed. R. Civ. P. 56(c), (e).  The nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit."  Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); see also Celotex, 477 U.S. at 324.  Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Id. at 322; see also Abromson v. Am. Pac. Corp., 114 F.3d 898, 902 (9th Cir. 1997).

In light of the facts presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law.  See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631 & n.3 (9th Cir. 1987).  When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted); Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co., 121 F.3d 1332, 1335 (9th Cir. 1997).  Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue.  See Matsushita, 475 U.S. at 587.

## IV.    DISCUSSION

### A.        Breach of Express Oral Contract and Breach of Implied-in-Fact Contract Claims

Plaintiff alleges in his fifth and sixth claims that CooperSurgical breached an express oral agreement and an implied agreement not to terminate plaintiff's employment without good cause.  Compl. ¶¶ 54–57, 58–62.

Under California law, "[a]n employment, having no specified term, may be terminated at the will of either party on notice to the other."  Cal. Lab. Code § 2922.

**CIVIL MINUTES – GENERAL**            **'O'**

| Case No. | 2:16-cv-07144-CAS(KSx) | Date | November 20, 2017 |
|---|---|---|---|
| Title | CHRISTOPHER LANDIG v. COOPERSURGICAL, INC. ET AL. | | |

Although this at-will presumption can be overcome by evidence of an implied-in-fact agreement for employment for a specified term, no such contract can exist where it would be inconsistent with the *plain and express language* of an at-will employment relationship. See Agosta v. Astor, 120 Cal. App. 4th 596, 604, 15 Cal. Rptr. 3d 565, 570 (2004) ("There cannot be a valid express contract and an implied contract, each embracing the same subject, but requiring different results."); Camp v. Jeffer, Mangels, Butler & Marmaro, 35 Cal. App. 4th 620, 630 (1995) ("The express term is controlling even if it is not contained in an integrated employment contract."); Comeaux v. Brown & Williamson Tobacco Co., 915 F.2d 1264, 1271 n. 7 (9th Cir. 1990) (stating that where contract stated that employment was at will, "oral statements [could] not be admitted to create an implied termination-only-for-cause contractual agreement").

Defendants argue that plaintiff was employed pursuant to an explicit at-will agreement, which he understood meant that his employment could be terminated at any time and without cause. MSJ at 28, Reply at 30.

Plaintiff contends that this issue is a question of fact, citing Guz v. Bechtel Nat. Inc., 24 Cal. 4th 317 (2000), and argues that the existence of an implied agreement not to discharge without cause depends on the totality of the circumstances. Opp'n at 21 (citing Foley v. Interactive Data Corp., 47 Cal.3d 654 (1988)). Moreover, plaintiff argues that lengthy employment persuades for an implied-in-fact agreement, and that plaintiff's nearly ten years of employment is sufficient to give rise to this inference. Id. (citing McLain v. Great Am. Ins. Cos., 208 Cal. App. 3d 1476, 1481 (1989)).

As an initial matter, plaintiff's reliance on Guz is inapposite. The Supreme Court of California observed in that case that most California courts "have held that an at-will provision in an express written agreement, signed by an employee, cannot be overcome by proof of an implied contrary holding." Guz, 24 Cal. 4th at 340, n. 10. Moreover, the court observed that "where the undisputed facts negate the existence or the breach of the contract claims, summary judgment is proper." Id. at 337. Just so here. Defendants proffer sufficient evidence to demonstrate that plaintiff was employed pursuant to an express at-will agreement. Plaintiff's offer letter reflected that his employment at CooperSurgical was at-will, DSUF & Ex. 2, and plaintiff signed a human resources authorization form acknowledging his employment was at will and could be terminated without cause or notice. DSUF & Ex. 6. Moreover, plaintiff understood that he was employed pursuant to an at-will agreement, DSUF at no. 134; Landig Depo. at 20:16-21:2, 21:10-13 & Ex. 2, and acknowledges that he was never told by anyone at

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:16-cv-07144-CAS(KSx) | Date | November 20, 2017 |
|----------|------------------------|------|-------------------|
| Title | CHRISTOPHER LANDIG v. COOPERSURGICAL, INC. ET AL. | | |

CooperSurgical that his employment was not at will, DSUF at no. 135; Landig Depo. at 21:3-5.

Plaintiff fails to proffer evidence of subsequent express oral statements that his employment was not at will, and plaintiff's implied-in-fact argument is foreclosed by the above-cited California case law holding that the existence of an express contract precludes the existence of an implied-in-fact contract. Accordingly, the Court **GRANTS** summary judgment as to plaintiff's fifth claim for breach of express oral contract, and as to plaintiff's sixth claim for breach of implied contract.

## B.     Negligent Hiring, Supervision, and Retention

Plaintiff alleges in his seventh claim that CooperSurgical owed a duty of care to plaintiff to retain and supervise persons who would not engage in retaliatory, harassing, or discriminatory conduct, and that it breached this duty to plaintiff.[17] Compl. ¶¶ 63–65.

Under California law, "Liability for negligent ... retention of an employee is one of direct liability for negligence, not vicarious liability ... [and] [l]iability under this rule is limited by basic principles of tort law, including requirements of causation and duty." Phillips v. TLC Plumbing, Inc., 172 Cal. App. 4th 1133, 1139 (2009) (citing Restatement (Third) of Agency § 7.05, cmt. c, p. 180). The rule "requires some nexus or causal connection between the principal's negligence in selecting or controlling an actor, the actor's employment or work, and the harm suffered by the third party." Id. (citing Restatement (Third) of Agency § 7.05, cmt. c, illus. 5, p. 180). "Negligence liability will be imposed on an employer if it 'knew or should have known that hiring [or retaining] the employee created a particular risk or hazard and that particular harm materializes.' " Id. (citation omitted).

---

[17]     Though the Workers' Compensation Act typically bars negligence claims brought by an employee against the employer, claims arising out of injury related to discrimination "implicate fundamental public policy considerations" and are not preempted by the Workers' Compensation Act. Maynard v. City of San Jose, 37 F.3d 1396, 1405 (9th Cir. 1994). Because "[p]laintiff's negligence claim rests on facts supporting [his] claim for [ ] discrimination," the Workers' Compensation Act accordingly does not preempt this claim. Muniz v. United Parcel Serv., Inc., 731 F. Supp. 2d 961, 976 (N.D. Cal. 2010).

| Case No. | 2:16-cv-07144-CAS(KSx) | Date | November 20, 2017 |
|----------|------------------------|------|-------------------|
| Title | CHRISTOPHER LANDIG v. COOPERSURGICAL, INC. ET AL. | | |

In addition, an employer "is not liable [for negligent hiring or retention] ... merely because [an employee] is incompetent, vicious, or careless." Robinson v. HD Supply, Inc., 2012 WL 5386293, at *8 (E.D. Cal. Nov. 1, 2012) (citation omitted). Rather, "an employer's duty ... is breached only when the employer knows, or should know, facts which would warn a reasonable person that the employee presents an undue risk of harm ... in light of the particular work to be performed." Federico v. Super. Ct., 59 Cal. App. 4th 1207, 1214 (1997); see also Molina v. City of Visalia, 2014 WL 1329711, at *1 (E.D. Cal. Apr. 2, 2014) ("[N]egligence liability will only be imposed upon a supervisor or employer that 'knew or should have known' that the particular hiring/supervision decision or training practice 'created a particular risk or hazard' "). Thus "an employer's liability must be determined in the context of the specific duties the work entails," and liability arises only when the employer "antecedently had reason to believe that an undue risk of harm would exist because of the employment." Federico, 59 Cal. App. 4th at 1215.

Defendants argue that insofar as plaintiff's seventh claim is predicated on the theory that he was subject to discrimination, harassment, or retaliation, this claim fails. MSJ at 29. Moreover, defendants argue that plaintiff fails to proffer facts that demonstrate what CooperSurgical knew about Hickman prior to plaintiff's hire. Reply at 30.

Plaintiff contends that because plaintiff expressed his concerns about Hickman's allegedly unlawful treatment, his concerns were ignored, and he ultimately suffered from emotional distress as a result of Hickman's conduct, defendants are liable for negligent hiring, supervision, and retention. Opp'n at 30.

The Court finds that no triable issue of material fact exists with respect to plaintiff's negligent retention claim. The record is devoid of admissible evidence that demonstrates that CooperSurgical had reason to believe that Hickman posed an undue risk of harm to its employees, particularly in light of the fact that Augustine concluded there was no evidence of age bias following her 2012 investigation, and because Augustine cautioned Hickman about his emotions and the use of profanities following plaintiff's 2015 complaint. There is also no evidence to demonstrate that CooperSurgical failed to use reasonable care in ascertaining Hickman's fitness as an employee. Moreover, employers are only liable for negligent retention "when the employer knew or should have known that hiring or retaining the employee created a particular risk or hazard and *that particular harm materializes*." Garcia ex rel Marin v. Clovis Unified

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| CIVIL MINUTES – GENERAL | | | 'O' |
|---|---|---|---|
| Case No. | 2:16-cv-07144-CAS(KSx) | Date | November 20, 2017 |
| Title | CHRISTOPHER LANDIG v. COOPERSURGICAL, INC. ET AL. | | |

School Dist., 627 F. Supp. 2d 1187, 1208 (E.D. Cal. Apr. 16, 2009), citing Doe v. Capital Cities, 50 Cal. App. 4th 1038, 1054 (1996)) (emphasis added). The evidence fails to demonstrate that, after Hickman's alleged verbal outburst against plaintiff in May 2015, Hickman repeated this inappropriate conduct with another employee. No reasonable jury could conclude, based on the admissible evidence, that CooperSurgical was aware that Hickman posed an undue risk of harm to its employees.

Accordingly, the Court **GRANTS** defendants' motion for summary judgment as to plaintiff's seventh claim for negligent retention.

### C.    Intentional Infliction of Emotional Distress

Plaintiff's tenth claim against defendants asserts intentional infliction of emotional distress. Compl. ¶ 79. A claim for intentional infliction of emotional distress exists when plaintiff alleges that "(1) the defendant engaged in extreme and outrageous conduct with the intention of causing, or reckless disregard of the probability of causing, severe emotional distress to the plaintiff; (2) the plaintiff actually suffered severe or extreme emotional distress; and (3) the outrageous conduct was the actual and proximate cause of the emotional distress." Ross v. Creel Printing & Publ'g Co., 100 Cal. App. 4th 736, 744–45 (2002). Conduct is outrageous if it is "so extreme as to exceed all bounds of that usually tolerated in a civilized community." Conley v. Roman Catholic Archbishop of San Francisco, 85 Cal. App. 4th 1126, 1133 (2000). "Severe emotional distress means emotional distress of such substantial quality or enduring quality that no reasonable [person] in civilized society should be expected to endure it." Potter v. Firestone Tire & Rubber Co., 863 P.2d 795, 821 (Cal. 1993).

Defendants argue that because defendants did not engage in harassment, discrimination, or retaliation, plaintiff's claim fails as a matter of law. MSJ at 30. Moreover, they argue that Hickman is protected from individual liability by the doctrine of managerial immunity. MSJ at 31 (citing Sheppard v. Freeman, 67 Cal. App. 4th 339, 347 (1998)).

Plaintiff responds that Hickman's conduct in screaming profanities at plaintiff, telling him he knew that he was 60 years old and the oldest, highest-paid employee have no relation to personnel decisions, and accordingly, he is not protected by the doctrine of managerial immunity. Opp'n at 24–25 (citing Sheppard, 67 Cal. App. 4th 339 at 347). Plaintiff further argues that his claims for retaliation, harassment, discrimination, and

CIVIL MINUTES – GENERAL          'O'

| Case No. | 2:16-cv-07144-CAS(KSx) | Date | November 20, 2017 |
|---|---|---|---|
| Title | CHRISTOPHER LANDIG v. COOPERSURGICAL, INC. ET AL. | | |

wrongful employment termination all support his claim for intentional infliction of emotion distress. Id. at 25 (citing Cabuseula v. Browning-Ferris Industries of California, Inc., 68 Cal. App. 4th 101, 112 (1998)).

As an initial matter, the Court observes that managerial immunity does not bar plaintiff's claim for intentional infliction of emotional distress against Hickman because it is based on alleged discriminatory conduct not attributable to the normal parts of an employment relationship. See Hattox v. State Farm Mut. Auto. Ins. Co., No. 12-CV-2597-AJB-KSC, 2013 WL 314953, at *7 (S.D. Cal. Jan. 25, 2013) ("there is no authority for the proposition that a manager may not be liable in tort for the intentional infliction of emotion distress providing all of the elements of that tort are satisfied") (citing Calero v. Unisys Corp., 271 F. Supp. 2d 1172, 1178 (N.D. Cal. 2003) ("California case law is replete with cases where conduct of the employer or one of its agents or employees is so outside the bounds of conduct tolerated by a decent society that it may give rise to a claim for intentional infliction of emotional distress.")).

Plaintiff's claim for intentional infliction of emotion distress requires that defendants engaged in extreme and outrageous conduct. The Court finds that whether Hickman's alleged discriminatory comments and outburst to plaintiff constituted extreme conduct is a matter better suited for a jury. A reasonable trier of fact could find that Hickman's age-related comments and profanities directed at plaintiff during the May 2015 ride-along were outrageous—especially in light of Hickman's supervisory position—and that they were done for purposes of discrimination or harassment prohibited by FEHA and were intended to cause plaintiff emotional distress. Triable issues of material fact therefore preclude summary adjudication of this claim. Accordingly, the Court **DENIES** summary judgment as to plaintiff's tenth claim.

### D.    Plaintiff's FEHA-Based Claims

Plaintiff asserts in his first, second, third, fourth, and eighth claims that defendants failed to promote, harassed and discriminated against plaintiff on the basis of his age; that defendants retaliated against him for complaining about age discrimination and harassment; and that defendants wrongfully terminated plaintiff in violation of California public policy, FEHA, and California Labor Code section 1102.5. Compl. ¶¶ 26, 33, 40, 49, 67.

**CIVIL MINUTES – GENERAL**                      **'O'**

| Case No. | 2:16-cv-07144-CAS(KSx) | Date | November 20, 2017 |
|----------|------------------------|------|-------------------|
| Title    | CHRISTOPHER LANDIG v. COOPERSURGICAL, INC. ET AL. | | |

### 1.     Age Discrimination in Violation of FEHA

Plaintiff's first claim alleges age discrimination in violation of FEHA against CooperSurgical.  Compl. ¶ 26.  In evaluating claims for employment discrimination, California has adopted the three-stage burden shifting test set forth in McDonnell Douglas v. Green, 411 U.S. 792 (1973).  Guz v. Bechtel Nat'l, Inc., 24 Cal.4th 317, 354 (2000).  Once the plaintiff has made a prima facie showing of employment discrimination, "the burden then shifts to the employer to offer a legitimate, nondiscriminatory reason for the adverse employment action."  Deschene v. Pinole Point Steel Co., 76 Cal. App. 4th 33, 44 (1999).  If the employer offers such a reason, "plaintiff must offer evidence that the employer's stated reason is either false or pretextual, or evidence that the employer acted with discriminatory animus, or evidence of each which would permit a reasonable trier of fact to conclude the employer intentionally discriminated."  Id.

### a.     Prima Facie Case

To state a prima facie age discrimination case under FEHA, plaintiff must establish that: (1) he was a member of a protected class; (2) he was performing competently in the position he held; (3) he suffered an adverse employment action, such as termination; and (4) some other circumstances suggest discriminatory motive.  Guz, 24 Cal.4th at 355.  In claims for age discrimination, plaintiff may also satisfy the fourth element by demonstrating that he was replaced by substantially younger employees with equal or inferior qualifications.  Santillan v. USA Waste of California, Inc., 853 F.3d 1035, 1043 (9th Cir. 2017); Schechner v. KPIX-TV, 686 F.3d 1018, 1023 (9th Cir. 2012).  Here, the Court finds that there are triable questions as to several elements of plaintiff's prima facie case for age discrimination.

Defendants argue that plaintiff cannot establish he was performing his job satisfactorily—after the April 2015 plan and review meeting—and that there are no circumstances to suggest a discriminatory motive.  MSJ at 23.  Plaintiff responds that in 2014 plaintiff exceeded his quota and received positive mid-year and year-end reviews.  Opp'n at 16.

Initially, it is clear that plaintiff has satisfied the first and third elements based on his age and the fact that he suffered employment termination.  See, e.g., Beale v. GTE California, 999 F. Supp. 1312, 1322 (C.D. Cal. 1996) (noting that plaintiffs had

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:16-cv-07144-CAS(KSx) | Date | November 20, 2017 |
|----------|------------------------|------|-------------------|
| Title | CHRISTOPHER LANDIG v. COOPERSURGICAL, INC. ET AL. | | |

demonstrated their membership in a protected class because they were "over the age of forty").

With respect to the second element, defendants proffer evidence that Azarian and Hickman were dissatisfied with plaintiff's performance, but plaintiff similarly proffers evidence of positive 2014 mid-year and year-end reviews. Moreover, in Hickman's January 15, 2013 performance review, Hickman wrote that "Landig's knowledge of our business and products is among the best in the Western Region." PSF at no. 28.

With respect to the fourth element, plaintiff proffers evidence that suggests a discriminatory motive. For example, Hickman's alleged remarks about plaintiff's "big birthday" and the fact that plaintiff was the oldest and highest-paid employee in the company suggest a potential for age bias. Landig Decl. ¶ 20. In addition, the disciplinary September 2012 Performance Letter threatened plaintiff with employment termination, while another similar letter sent to a younger employee only threatened employment probation. Accordingly, viewing the evidence in the light most favorable to plaintiff, a rational jury could conclude that plaintiff has sufficiently demonstrated a prima facie case for age discrimination.

### b.     Whether Defendants Had a Legitimate, Non-Discriminatory Business Reason for Terminating Plaintiff's Employment

To be "legitimate," the employer's proffered reason need only be "facially unrelated to prohibited bias." Reid v. Google, Inc., 50 Cal. 4th 512, 520 n.2 (2010); see also McInteer v. Ashley Distribution Services, Ldt., 40 F. Supp. 3d 1269, 1284 (C.D. Cal. 2014) ("Defendants' 'burden is one of production, not persuasion, thereby involving no credibility assessment.' ") (citing Day v. Sears Holdings Corp., 930 F. Supp. 2d 1146, 1169 (C.D. Cal. 2013)).

Defendants contend that plaintiff's employment was terminated because of his inability to follow direction, effectively plan and manage his territory, and perform the activities necessary to reach his quota. MSJ at 23. Because plaintiff's purportedly poor performance is "facially" unrelated to his age, defendants have met their burden to proffer a legitimate, non-discriminatory reason for terminating plaintiff's employment.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL      'O'

| Case No. | 2:16-cv-07144-CAS(KSx) | Date | November 20, 2017 |
|---|---|---|---|
| Title | CHRISTOPHER LANDIG v. COOPERSURGICAL, INC. ET AL. | | |

### c.    Showing of Pretext

"Once an employer has articulated a legitimate, non-discriminatory business reason for terminating an employee, the burden shifts to the employee to provide substantial, responsive and admissible evidence that the employer's stated reason is a pretext and that the true reason for the termination was illegal discrimination." Faust,150 Cal. App. 4th at 875. Nonetheless, as already stated, a reasonable fact finder could conclude that, contrary to defendants' opinion, plaintiff was a competent employee.

Defendants argue that *Azarian* made the final decision to terminate plaintiff's employment, and that Hickman made positive efforts to coach and guide plaintiff's performance after the May 2015 plan and review meeting. MSJ at 24. Defendants further contend that Hickman is the one who promoted Landig into the Senior Certified Sales Representative position, and accordingly, it is not consistent to draw an inference that Hickman had an issue with plaintiff's age or compensation. Id. (citing Coghlan v. Am. Seafoods Co. LLC, 413 F.3d 1090, 1096 (9th Cir. 2005)). Moreover, defendants argue, plaintiff admits that he has no evidence of age bias on the part of Azarian or Augustine, and that the decision makers in this case are all over 40 years old. Id.

Plaintiff argues that defendants gave shifting reasons for terminating plaintiff's employment. Opp'n at 17. In addition, plaintiff argues that defendants did not conduct any investigation of plaintiff's two separate complaints of unlawful treatment on the basis of his age, and accordingly, defendants' failure to honor CooperSurgical's policies and procedures evidences pretext. Id. at 18 (citing Village of Arlington Heights v. Met. Hous. Dev. Corp., 429 U.S. 252, 267 (1977)). Plaintiff next contends that biased remarks, regardless of how potentially benign, evince pretext, and thus Hickman's remarks about plaintiff's age creates an inference of pretext. Id. at 19 (citing Ercegovich, 154 F.3d at 355; Reid, 50 Cal.4th at 540; Pantoja v. Anton, 198 Cal. App. 4th 87, 119 (2011); O'Mary, 59 Cal. App. 4th at 575. Last, plaintiff contends that defendants are liable under the "Cat's Paw" theory because Hickman was involved in Azarian's decision to terminate plaintiff's employment, and accordingly, "a showing that a significant participant in an employment decision exhibited discriminatory animus is enough to raise an inference that the employment decision itself was discriminatory." Id. at 19–20 (citing DeJung v. Superior Court, 169 Cal. App. 4th 533 (2008)).

Defendants argue in response to plaintiff's "Cat's Paw" theory that none of the evidence reflects that Azarian scheduled the April 2015 plan and review meeting due to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL            'O'

| Case No. | 2:16-cv-07144-CAS(KSx) | Date | November 20, 2017 |
|---|---|---|---|
| Title | CHRISTOPHER LANDIG v. COOPERSURGICAL, INC. ET AL. | | |

Hickman's insistence. Reply at 12. The information that Azarian had about plaintiff's performance following the April 2015 meeting came, in part, from plaintiff's own weekly reports and emails, and moreover, Azarian made an independent assessment of plaintiff's performance from Hickman's Field Coaching Reports, which contained "significant points" that plaintiff did not dispute. Id. at 13.

Defendants further contend that Augustine responded to plaintiff's September 18, 2012 complaint by speaking to both parties, forming a conclusion, and communicating that conclusion to plaintiff. Reply at 23. Likewise, defendants argue, no discriminatory motives can be inferred from Augustine's investigation of the May 21, 2015 outburst incident, because her contemporaneous notes do not reflect that plaintiff reported any comment about his age and she did not interpret plaintiff's complaint to be grounded in age harassment or discrimination. Id. Plaintiff could not say for sure whether he told Augustine about Hickman's alleged age comments. Id. Moreover, defendants argue that plaintiff fails to explain the discrepancy between his deposition testimony, where he does not remember if he reported the "big birthday" comment to Augustine, Landig Depo. at 343:18-344:11, and his declaration, where he asserts that he included this remark in his complaint to Augustine. Id. at 24 (citing to Kennedy v. Allied Mut. Ins. Co., 952 F.2d at 266).

As an initial matter, the same-actor inference identified in Coghlan is "neither a mandatory presumption (on the one hand) nor a mere possible conclusion for the jury to draw (on the other). Rather, it is a 'strong inference' of no discriminatory action that a court must take into account on a summary judgment motion." Coghlan, 413 F.3d at 1098 (citation omitted). The Court is mindful of Coghlan's holding. Nonetheless, it is undisputed that Hickman promoted plaintiff because "his boss had an expectation," and, of the five direct employees, plaintiff was the only one eligible. PSF at no. 15. Notwithstanding plaintiff's promotion, and as set forth above, plaintiff raises two events that express a discriminatory motive with respect to plaintiff's age. First, the evidence demonstrates that Hickman's September 2012 Performance Letter to plaintiff—sent *after* plaintiff's promotion—warned plaintiff that his employment could be terminated if he did not meet the letter's stated objectives. See PSF & Ex. 3. In contrast, Hickman's September 2012 performance letter to Employee E—an employee in his 30's—merely warned Employee E that he faced "probation" if he did not meet the letter's stated objectives. See PSF & Ex. 4. Second, Hickman remarked to plaintiff during the first ride-along—and only three months before plaintiff's employment termination—that he knew plaintiff had just had his "big birthday," and that plaintiff was the oldest and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL                    'O'

| Case No. | 2:16-cv-07144-CAS(KSx) | Date | November 20, 2017 |
| Title | CHRISTOPHER LANDIG v. COOPERSURGICAL, INC. ET AL. | | |

highest-paid employee at the company. Viewed in the light most favorable to plaintiff, the Court cannot conclude as a matter of law that these statements were not indicative of age bias, particularly so close to plaintiff's employment termination and during a time when Hickman was, at Azarian's direction, required to be coaching and supporting plaintiff.

In addition, no reasonable jury could find that Hickman was not a direct and important participant in the final decisionmaking process leading to Azarian's final decision to terminate plaintiff's employment. Azarian directed Hickman to "coach and guide" plaintiff's performance before he reached a final decision, and it is undisputed that both Hickman and Azarian agreed together to make the final decision to terminate plaintiff's employment. PSF at no. 59.

Accordingly, because plaintiff demonstrates two separate events that could express a discriminatory motive with respect to his age by Hickman, and because Hickman took part in the final decision to terminate plaintiff's employment, plaintiff has met his burden to proffer evidence demonstrating that defendants' proffered legitimate, non-discriminatory reason for terminating his employment was pretextual. As such, there is a disputed issue of material fact to be decided by the jury.

Therefore, the Court **DENIES** defendants' motion for summary judgment as to plaintiff's age discrimination claim.

### 2.     Failure to Promote Due to Age Discrimination in Violation of FEHA

Plaintiff's fourth claim against CooperSurgical alleges failure to promote on the basis of age discrimination in violation of FEHA. Compl. ¶ 14. The <u>McDonnell Douglas</u> burden-shifting regime similarly applies to this claim for discrimination in violation of FEHA.

### a.     Prima Facie Case

As stated, a prima facie age discrimination case under FEHA requires that plaintiff establish: (1) he was a member of a protected class; (2) he was performing competently in the position he held; (3) he suffered an adverse employment action; and (4) some other circumstances suggest discriminatory motive. <u>Guz</u>, 24 Cal.4th at 355.

CIVIL MINUTES – GENERAL                          'O'

| Case No. | 2:16-cv-07144-CAS(KSx) | Date | November 20, 2017 |
|----------|------------------------|------|-------------------|
| Title    | CHRISTOPHER LANDIG v. COOPERSURGICAL, INC. ET AL. | | |

Defendants argue that there is no evidence that plaintiff's age was a factor in the decision not to promote him. MSJ at 25. Moreover, the individual who was selected instead—Mukand—was 57 years old and already a Regional Manager in a different region. Id. Azarian formed the impression that plaintiff was not willing to relocate for the position, and was not particularly interested. Id.

In opposition, plaintiff argues that plaintiff specifically told Azarian during their interview that he was willing to relocate. Opp'n at 20. Accordingly, plaintiff argues, Azarian's "false reason" for failing to promote plaintiff is evidence of pretext. Id. at 20.

The only prong of the test at issue with respect to plaintiff's fourth claim is whether there were circumstances surrounding the failure to promote that suggest a discriminatory motive. The undisputed facts show that in February 2015, plaintiff forwarded his resume to Azarian in order to apply for the Regional Manager, Mountain States position. PSF at no. 35. Azarian preferred that Regional Managers live within their respective regions to cut down on travel time and expenses. DSUF at no. 113. Azarian conducted a telephonic interview with plaintiff, DSUF at no. 155, after which he formed the impression that plaintiff was not willing to relocate, despite plaintiff's contentions that he explicitly offered to relocate for the position.[18] DSUF at no. 116; PSF at no. 35. Azarian had to prompt plaintiff afterwards to send an updated resume, which left him with a further impression that plaintiff was not that interested in the promotion. DSUF at nos. 117, 118.

Plaintiff fails to proffer any evidence that demonstrates circumstances to suggest discriminatory motive. He fails to show that Azarian made any age-related comments to him. Furthermore, the individual who was selected for the Regional Manager position was 57 years old, and thus not significantly younger than plaintiff. DSUF at 122. Accordingly, the Court **GRANTS** defendants' motion for summary judgment with respect to plaintiff's fourth claim for failure to promote on the basis of age discrimination in violation of FEHA.[19]

---

[18]     Plaintiff suggested during his deposition that, for purposes of a job interview, he says what he thinks is required and figures out later what he is willing to do. Landig Depo. at 142:7- 19.

[19]     Notwithstanding the Court's conclusion with respect to plaintiff's failure to promote claim, the Court does not intend to suggest that plaintiff cannot assert that the

| CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|
| Case No. | 2:16-cv-07144-CAS(KSx) | Date | November 20, 2017 |
| Title | CHRISTOPHER LANDIG v. COOPERSURGICAL, INC. ET AL. | | |

### 3.    Age Harassment in Violation of FEHA

Plaintiff asserts in his second claim that defendants engaged in age harassment in violation of FEHA.[20]  Compl. ¶ 33.  To establish a prima facie claim for harassment under FEHA, "a plaintiff must demonstrate that: (1) [he] is a member of a protected group; (2) [he] was subjected to harassment because [he] belonged to this group; and (3) the alleged harassment was so severe that it created a hostile work environment."  Lawler v. Montblanc N. Am., LLC, 704 F.3d 1235, 1244 (9th Cir. 2013); see also Chavez v. JPMorgan Chase Bank, No. 15-cv-02328-DDP-PJW, 2016 WL 3556591, at *6 (C.D. Cal. June 29, 2016) (a "[p]laintiff alleging age-based harassment must demonstrate, among other things, that the harassment 'is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.' " (quoting Mokler v. Country of Orange, 157 Cal. App. 4th 121, 145 (2007))).  In addition, "[t]he plaintiff must show a concerted pattern of harassment of a repeated, routine or a generalized nature."  Lawler, LLC, 704 F.3d at 1244 (quotation marks omitted).  "[E]vidence of, at most, isolated stray remarks is insufficient to give rise to a triable issue of fact regarding hostile work environment or harassment based on age."  Allen v. Centillium Comms., Inc., No. 06-cv-0615-EDL, 2008 WL 916976, at *7 (N.D. Cal. Apr. 3, 2008).  Harassment consists of "actions outside the scope of job duties" and "commonly necessary personnel management actions such as hiring and firing, job or project assignments, ... promotion or demotion, [and] performance evaluations, ... do not come within the meaning of harassment."  Lawler, 704 F.3d at 1244 (quotation marks omitted).  Further, "[t]he working environment must both subjectively and objectively be perceived as abusive."  Fuller v. City of Oakland, 47 F.3d 1522, 1527 (9th Cir. 1995).

Defendants argue that plaintiff's harassment claim necessarily fails because his claim is premised on management actions, such as Hickman's September 2012 Performance Letter and Hickman's attempts to improve plaintiff's performance after the plan and review meeting with Azarian.  MSJ at 26 (citing Janken v. GM Hughes Electronics, 46 Cal. App. 4th 55, 64–65 (1996)).  As such, defendants contend, these personnel management actions do not come within the meaning of harassment.  Id. Defendants further contend that the only alleged incident that could arguably fall outside

---

failure to promote was not part of a larger scheme of other discriminatory conduct in violation of FEHA.

[20]    FEHA harassment claims can be asserted against individuals.  Cal. Gov't. Code § 12940(i)-(j).

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:16-cv-07144-CAS(KSx) | Date | November 20, 2017 |
| --- | --- | --- | --- |
| Title | CHRISTOPHER LANDIG v. COOPERSURGICAL, INC. ET AL. | | |

of "personnel management" is the heated conversation between Hickman and plaintiff on May 21, 2015. Id. Defendants argue that this single, isolated incident is not sufficiently severe to create a hostile work environment. Id. at 26–27 (citing Faragher v. City of Boca Raton, 524 U.S. 755, 788 (1998)).

In opposition, plaintiff asserts that whether conduct constitutes harassment is usually a question of fact for the jury. Opp'n at 20 (citing Harris v. Forklift Systems. Inc., 510 U.S. 17, 23 (1993). Plaintiff contends that even a single offensive act or comment by a supervisor is sufficient for liability. Id. (citing Dee v. Vintage Petroleum, Inc., 106 Cal. App. 4th 30, 36 (2003)). In support of this assertion, plaintiff argues that he was insulted and forced to battle repeated inappropriate and unprofessional comments from Hickman regarding plaintiff's age. Id. Moreover, plaintiff contends, Hickman screamed profanities at plaintiff on May 21, 2015, which demonstrates harassment, and Hickman's age-related comments had nothing to do with personnel management. Id. at 21.

The California Supreme Court has concluded that "harassment consists of conduct outside the scope of necessary job performance, conduct presumably engaged in for personal gratification, because of meanness or bigotry, or for other personal motives." Roby v. McKesson Corp., 47 Cal. 4th 686, 707 (2009), as modified (Feb. 10, 2010) (quotation and citation omitted). However, the reasoning in Roby also makes clear that "discrimination and harassment claims can overlap as an evidentiary matter. The critical inquiry when a court is deciding whether the evidence is sufficient to uphold a verdict finding both discrimination and harassment is whether the evidence indicates violations of both FEHA prohibitions, but nothing prevents a plaintiff from proving these two violations with the same (or overlapping) evidentiary presentations." Id. at 709. In Roby, the plaintiff's supervisor made negative comments to plaintiff about her body odor, expressed disapproval when she took rest breaks, and overlooked her when handing out small gifts to other employees. He also disciplined her over repeated absences, which were due to a medical condition, and ultimately terminated her employment. Id. at 695. A jury found in plaintiff's favor on her FEHA harassment claim and the Court of Appeal reversed, reasoning—as defendants do here—that personnel decisions cannot constitute harassment. Id. at 700. The California Supreme Court reversed, holding that the Court of Appeal had improperly excluded discriminatory personnel decisions in examining plaintiff's harassment claim. Id. at 709. In distinguishing between harassment and discrimination under FEHA, harassment is generally concerned with the message conveyed to the employee, and therefore with the social environment of the workplace,

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:16-cv-07144-CAS(KSx) | Date | November 20, 2017 |
| Title | CHRISTOPHER LANDIG v. COOPERSURGICAL, INC. ET AL. | | |

where discrimination is concerned with explicit changes in terms of employment. Id. at 708.

Turning to the prima facie case, with respect to the first and second prongs it is clear that plaintiff is in a protected category (over 40) and that Hickman made an age-related remark to plaintiff during the May 2015 ride-along. The closer question is whether plaintiff proffers evidence demonstrating that Hickman's actions and remarks were severe enough to constitute a hostile environment under the third prong. Viewing the evidence in the light most favorable to plaintiff, the Court concludes that triable issues of material fact exist with respect to whether Hickman harassed plaintiff on the basis of his age. Acknowledging that Hickman's managerial conduct can serve as evidence for plaintiff's harassment claim, whether Hickman's conduct in issuing the performance review letters and his request for detailed weekly reports from plaintiff after the April 2015 plan and review meeting demonstrates "a concerted pattern of harassment of a repeated, routine or a generalized nature" is a matter better decided by a jury. See Aguilar v. Avis Rent A Car Sys., Inc., 21 Cal. 4th 121, 131 (1999). This is particularly true in light of plaintiff's evidence that Hickman made age-related remarks to plaintiff and yelled profanities at him during the May 2015 ride-along. Accordingly, the Court **DENIES** defendants' motion for summary judgment with respect to plaintiff's second claim for age harassment in violation of FEHA.

### 4.    Retaliation for Complaining of Age Discrimination and Harassment in Violation of FEHA

Plaintiff asserts in his third claim that CooperSurgical retaliated against him for complaining of age discrimination, in violation of FEHA. Compl. ¶ 40. Just as in claims for discrimination, California has adopted the McDonnell Douglas burden shifting test in claims for retaliation. See Yanowitz v. L'Oreal USA, Inc., 36 Cal. 4th 1028, 1042 (2005).

### a.    Prima Facie Case

"[T]o establish a prima facie case of retaliation under the FEHA, a plaintiff must show (1) he or she engaged in a 'protected activity,' (2) the employer subjected the employee to an adverse employment action, and (3) a causal link existed between the protected activity and the employer's action." Yanowitz v. L'Oreal USA, Inc., 36 Cal. 4th at 1042 (citation omitted).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL         'O'

| Case No. | 2:16-cv-07144-CAS(KSx) | Date | November 20, 2017 |
|---|---|---|---|
| Title | CHRISTOPHER LANDIG v. COOPERSURGICAL, INC. ET AL. | | |

Defendants argue that plaintiff's retaliation claim fails because he cannot establish a causal connection between the termination of his employment and any protected activity. MSJ at 28. In particular, three years passed between his September 2012 complaint to Augustine and the termination of his employment in August 2015. Id. Importantly, defendants contend, neither Hickman nor Azarian knew about this complaint and thus could not have been motivated by it. Id. Defendants further argue that plaintiff's May 2015 complaint about Hickman was not a protected complaint, as it did not relate to age discrimination, and that Azarian's initial decision to terminate plaintiff's employment was made in April 2015, before plaintiff's May 2015 complaint. Id.

Plaintiff contends that he engaged in protected activity on three occasions: his complaints to Augustine in 2012 and 2015, and his direct complaint to Hickman in 2013. Opp'n at 22. Plaintiff asserts that within three months of the May 2015 complaint his employment was terminated, and this timing strongly demonstrate retaliation. Id. Even in the absence of close temporal proximity, plaintiff argues, the evidence demonstrates that there was a pattern of conduct consistent with retaliatory intent, and that also establishes a causal connection. Id. at 23. For example, after plaintiff made his May 2015 complaint, he was sent on another ride-along with Hickman in June 2015. Id.

Section 12940(h) of FEHA makes it an unlawful employment practice "[f]or any employer ... to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part." Though plaintiff indisputably engaged in a protected activity when he made his 2012 age bias complaint to Augustine regarding the September 2012 Performance Letter, this complaint was made nearly three years before his employment was terminated. Accordingly, the lack of proximity in time between the 2012 complaint and the 2015 employment termination defeats any inference of causal connection between the two. See Jefferson v. The Boeing Co., 675 F. App'x 672, 675 (9th Cir. 2017) (observing that adverse employment action taken two years after protected activity failed to demonstrate causality) (citing Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 274 (2001) ("Action taken ... 20 months later suggests, by itself, no causality at all.")).

However, whether plaintiff's May 2015 complaint to Augustine constituted protected activity is a closer question. The undisputed facts reflect that in late May 2015, plaintiff reported to Augustine that on the last day of his May ride-along Hickman blew up at him, held his fists in the air, directed profanities at him, and yelled "I'm so mad at

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| CIVIL MINUTES – GENERAL | | | 'O' |
|---|---|---|---|
| Case No. | 2:16-cv-07144-CAS(KSx) | Date | November 20, 2017 |
| Title | CHRISTOPHER LANDIG v. COOPERSURGICAL, INC. ET AL. | | |

you I could kill you!" PSF at no. 49; DSUF at no. 96. Augustine did not interpret plaintiff's complaint about Hickman to be related to perceived age harassment or discrimination, DSUF at no. 108; Augustine Decl. ¶ 10 & Ex. 49. Augustine's contemporaneous notes of her interview with plaintiff do not reflect any reference to plaintiff's age, and she did not interpret plaintiff's complaint about Hickman to be related to perceived age harassment or discrimination. DSUF at no. 98; Augustine Decl. ¶ 10 & Ex. 49. Although plaintiff stated in the first day of his deposition testimony that he recalled reporting Hickman's age-related remarks to her, Landig Depo. at 209:18-210:7, the following question and plaintiff's answer reflects that plaintiff was uncertain about whether he actually reported Hickman's remarks:

> Q.     Did you report to Joanna Augustine that Mr. Hickman said to you, "I know you are 60 and I know you were the oldest and highest paid sales employee at Cooper"?
>
> A.     I can't for certain say that I said that to Joanne. I mean, I called her and I talked about the exchange at the Marriott. But I don't know if I mentioned this or not. I can't remember that.

Landig Depo. at 343:18-344:11. Nevertheless, plaintiff's relative uncertainty demonstrates a triable issue of material fact as to whether plaintiff engaged in protected activity when he reported the May 2015 complaint to Augustine.

Even if plaintiff failed to report Hickman's May 2015 age-related remarks to Augustine, plaintiff's 2015 complaint may have nevertheless constituted protected activity if he "oppose[d] conduct that [he] reasonably and in good faith believe[d] to be discriminatory, whether or not the challenged conduct is ultimately found to violate the FEHA." Yanowitz, 36 Cal.4th 1028 at 1043. With respect to this point, "[t]he relevant question ... is not whether a formal accusation of discrimination is made but whether the employee's communications to the employer sufficiently convey the employee's reasonable concerns that the employer has acted or is acting in an unlawful discriminatory manner." Id. at 1047. Whether plaintiff's formal accusation to Augustine stemmed from plaintiff's concern that Hickman's conduct was harassing or discriminatory, in violation of FEHA, is a matter better left to a jury. As the California Supreme Court observed,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     **'O'**

| Case No. | 2:16-cv-07144-CAS(KSx) | Date | November 20, 2017 |
|---|---|---|---|
| Title | CHRISTOPHER LANDIG v. COOPERSURGICAL, INC. ET AL. | | |

> It is well established that a retaliation claim may be brought by an employee
> who has complained of or opposed conduct that the employee reasonably
> believes to be discriminatory, even when a court later determines the
> conduct was not actually prohibited by the FEHA. … Strong policy
> considerations support this rule. Employees often are legally
> unsophisticated and will not be in a position to make an informed judgment
> as to whether a particular practice or conduct actually violates the governing
> antidiscrimination statute. A rule that permits an employer to retaliate
> against an employee with impunity whenever the employee's reasonable
> belief turns out to be incorrect would significantly deter employees from
> opposing conduct they believe to be discriminatory.

Yanowitz, 36 Cal.4th 1028 at 1043 (citations omitted). Considering the evidence in the light most favorable to plaintiff, a reasonable jury could conclude that plaintiff's May 2015 complaint to Augustine conveyed his reasonable concerns that Hickman's conduct was harassing or discriminatory, and accordingly, that the complaint was protected activity.

With respect to the third prong, which requires a causal link between the protected activity and the employer's action, the Ninth Circuit has concluded that a two-month proximity is "sufficient to establish a genuine issue of material fact as to whether a causal link exists." Arn v. News Media Grp., 175 F. App'x 844, 846 (9th Cir. 2006) (citing Thomas v. City of Beaverton, 379 F.3d 802, 812 (9th Cir. 2004)). Here, defendants contend that plaintiff reported his May 2015 complaint to Augustine "on or about May 28, 2015." DSUF at no. 96. On or about the following day, Augustine spoke with Hickman to ask him about the incident, and thereby put Hickman on notice that plaintiff had made a complaint. DSUF at no. 97. Because Azarian and Hickman decided to move forward with termination on August 9, 2015, the Court finds that this two-month, one-week period between the protected activity and employment termination is sufficient to establish a genuine issue of material fact regarding whether a causal link exists. Even if Azarian had considered terminating plaintiff after the April 2015 plan and review meeting, triable issues of material fact remain in light of the fact that Azarian and Hickman made the *final* decision to terminate plaintiff a little over two months after plaintiff's complaint.

As the Court analyzed above, defendants offer a legitimate, nondiscriminatory reason for terminating plaintiff's employment. Nevertheless, the Court finds that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:16-cv-07144-CAS(KSx) | Date | November 20, 2017 |
|---|---|---|---|
| Title | CHRISTOPHER LANDIG v. COOPERSURGICAL, INC. ET AL. | | |

defendants are not entitled to summary judgment as to plaintiff's retaliation claim. Viewed in the light most favorable to plaintiff, the close temporal proximity between plaintiff's protected activity and his employment termination, along with Hickman's poor review of plaintiff's June 2015 ride-along, raise a triable issue of material fact with respect to pretext.

Accordingly, the Court **DENIES** summary judgment as to plaintiff's third claim for retaliation for complaining of age discrimination in violation of FEHA.

### 5. Wrongful Termination of Employment in Violation of California Public Policy

Plaintiff asserts in his eighth claim that CooperSurgical wrongfully terminated his employment in violation of California public policy. Compl. ¶ 67. California law recognizes a claim for wrongful termination in violation of a public policy reflected in a statute or constitutional provision. Tameny v. Atlantic Richfield Co., 27 Cal.3d 167, 172 (1980) ("In a series of cases arising out of a variety of factual settings in which a discharge clearly violated an express statutory objective or undermined a firmly established principle of public policy, courts have recognized that an employer's traditional broad authority to discharge an at-will employee 'may be limited by statute ... or by considerations of public policy' " (citations omitted)); see also Kelly v. Methodist Hospital of Southern California, 22 Cal.4th 1108, 1112, 95 (2000) ("Tameny claims permit wrongful termination damages when a termination is undertaken in violation of a fundamental, substantial and well-established public policy of state law grounded in a statute or constitutional provision"); Gantt v. Sentry Insurance, 1 Cal.4th 1083, 1094–95, (1992) (same), disapproved on other grounds in Green v. Ralee Engineering Co., 19 Cal. 4th 66, 78 (1998).

Plaintiff bears the burden of identifying the specific statute on which he bases his wrongful termination claim. Day v. Sears Holdings Corp., 930 F. Supp. 2d 1146, 1189 (C.D. Cal. 2013) (citations omitted). Plaintiff's wrongful termination claim is premised on violations of California Labor Code section 1102.5 and on violations of FEHA.[21] Compl. ¶¶ 67. FEHA's prohibition against age discrimination in employment sufficiently

---

[21]     Plaintiff may properly rely on section 1102.5 as a statutory predicate for his wrongful termination claim. See Day, 930 F. Supp. 2d 1146 at 1190-91.

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:16-cv-07144-CAS(KSx) | Date | November 20, 2017 |
|---|---|---|---|
| Title | CHRISTOPHER LANDIG v. COOPERSURGICAL, INC. ET AL. | | |

establishes a fundamental public policy against such discrimination for purposes of a wrongful discharge claim.  See <u>Stevenson v. Superior Court</u>, 16 Cal.4th 880, 898 (1997).

In assessing a claim for wrongful termination in violation of public policy, "California courts apply the burden shifting analysis as set forth in <u>McDonnell Douglas</u>." <u>Velto v. Draeger Medical, Inc.</u>, No. 06-CV-5190-RBL, 2007 WL 4376200, *3 (W.D. Wash. Dec. 13, 2007), citing <u>Nelson v. United Technologies</u>, 74 Cal. App. 4th 597, 613 (1999); <u>see also</u> <u>Loggins v. Kaiser Permanente Intern.</u>, 151 Cal. App. 4th 1102, 1108–09 (2007) ("When a plaintiff alleges retaliatory employment termination ... as a claim for wrongful employment termination in violation of public policy, and the defendant seeks summary judgment, California follows the burden shifting analysis of <u>McDonnell Douglas Corp.</u>").  Because plaintiff premises his wrongful termination claim on defendants' alleged violations of FEHA, for the same reasons set forth in the Court's analysis of plaintiff's age discrimination claim, plaintiff raises triable issues of fact regarding pretext here. Therefore, the Court **DENIES** summary judgment as to plaintiff's eighth claim for wrongful termination.

###    E.    Violations of California Labor Code § 1102.5

Plaintiff asserts in his ninth claim that CooperSurgical violated California Labor Code section 1102.5.  Compl. ¶ 74.  In order to establish a prima facie case for a violation under section 1102.5, "a plaintiff must show (1) [he] engaged in a protected activity, (2) [his] employer subjected [him] to an adverse employment action, and (3) there is a causal link between the two." <u>Mokler v. County of Orange</u>, 157 Cal. App. 4th 121, 138 (2007)).

Because the Court concludes in its analysis above that triable issues of material fact exist with respect to plaintiff's prima facie case for retaliation—the same test as the one at issue here—the Court **DENIES** summary judgment with respect to plaintiff's ninth claim for violation of California Labor Code section 1102.5.

## V.    CONCLUSION

In accordance with foregoing, the Court **GRANTS** in part and **DENIES** in part defendants' motion for summary judgment.[22]

---

[22]    While the Court is somewhat skeptical of the viability of certain FEHA claims alleged herein, the Court concludes that these claims are better decided after hearing the

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:16-cv-07144-CAS(KSx) | Date | November 20, 2017 |
|---|---|---|---|
| Title | CHRISTOPHER LANDIG v. COOPERSURGICAL, INC. ET AL. | | |

     The Court **GRANTS** summary judgment as to plaintiff's fourth, fifth, sixth, and seventh claims. The Court **DENIES** summary judgment as to plaintiff's first, second, third, eighth, ninth, and tenth claims.

     IT IS SO ORDERED.

|  | 00 | : | 10 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |

evidence in this case, particularly in light of the fact that the evidence is so intertwined. If appropriate, the Court will consider whether judgment under Rule 50 is appropriate with respect to these claims.